## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| | ) |
| | ) |
| **MORPHOTRUST USA, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Civil Action No.: 16-cv-10074** |
| **IDENTRIX, LLC, INFOZEN, INC., and** | ) |
| **INFOZEN LLC,** | ) |
| | ) |
| **Defendants.** | ) |

_____)

## <u>MEMORANDUM AND ORDER</u>

**CASPER, J.**                                                                **June 21, 2016**

## I.      Introduction

Plaintiff MorphoTrust USA, LLC ("MorphoTrust") has brought this action against Defendants IDentrix, LLC ("IDentrix"), InfoZen, LLC and InfoZen, Inc. (collectively, "Defendants"), alleging federal trademark infringement under 15 U.S.C. § 1114(a) (Count I), false designation of origin under 15 U.S.C. § 1125(a) (Count II), injury to reputation and dilution under Mass. Gen. L. c. 110H, § 13 (Count IV), common law trademark infringement (Count V), and unfair trade practices under Mass. Gen. L. c. 93A, § 11 (Count VI).[1] D. 1 ¶¶ 49-87. MorphoTrust specifically alleges that, in 2013, Defendants began using an identity-based software, IDENTRIX, that competes directly with and infringes upon MorphoTrust's thirty-year old trademark, IDENTIX. D. 1 ¶¶ 23-28.

_____

[1]   MorphoTrust designates its request for "[c]ancellation of IDENTRIX [r]egistration" as Count III. D. 1 ¶¶ 66-72.

Defendants move to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).  D. 8.  Defendants also move to dismiss the action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, alternatively, to transfer the action to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a).  Id.  MorphoTrust opposes the motion to dismiss, D. 15, and, alternatively, seeks jurisdictional discovery to the extent necessary to support its contention that this Court has personal jurisdiction over Defendants. D. 15 at 21-22.  For the reasons stated below, the Court DENIES Defendants' motion and DENIES MorphoTrust's request for jurisdictional discovery.

## II.     Standard of Review

On a motion to dismiss for lack of personal jurisdiction, the burden to establish personal jurisdiction belongs to the plaintiff.  See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).  If a defendant asserts that plaintiff has failed to make a *prima facie* showing to support jurisdiction, the Court must determine "whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (internal quotation marks omitted) (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)).  The Court accepts "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construes them in the light most congenial to the plaintiff's jurisdictional claim" and then adds "facts put forward by the defendants, to the extent that they are uncontradicted."  Mass. Sch. of Law, 142 F.3d at 34. The Court, however, will not "credit conclusory allegations or draw farfetched inferences." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994).  In conducting this analysis, the Court considers the alleged facts and the parties' supplemental filings, including

affidavits.  See Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster, 26 F.3d at 203.

On a motion to dismiss for improper venue, the Court is "not required to determine the best venue, merely a proper venue."  Astro–Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009).  The plaintiff bears the burden to establish that the venue he has selected is proper.  See, e.g., Sindi v. El-Moslimany, No. 13-cv-10798-IT, 2014 WL 6893537, at *11 (D. Mass. Dec. 5, 2014) (quoting TransAmerica Corp. v. Trans-Am Leasing Corp., 670 F. Supp. 1089, 1090 (D. Mass. 1987)); Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979).  In assessing the plaintiff's showing, the Court may accept all well-pleaded allegations as true, unless they are contradicted by the defendant's affidavits.  See Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Interests in Int'l & Foreign Courts, 898 F. Supp. 2d 301, 317 (D. Mass. 2012) (quoting Turnley v. Banc of Am. Inv. Services, Inc., 576 F. Supp. 2d 204, 211 (D. Mass. 2008)).

### III.    Factual Background

The following relevant facts are alleged in MorphoTrust's complaint or the parties' supplementary filings.  MorphoTrust is a Delaware limited liability company with its principal place of business in Massachusetts.  D. 1 ¶ 3.  MorphoTrust is headquartered in Billerica, Massachusetts.  Id.  MorphoTrust offers personal identity authentication products and services.  Id. ¶ 11.

InfoZen, Inc. was a former Maryland limited liability company with a principle place of business in Bethesda, Maryland.  D. 1 ¶ 4; D. 10 ¶ 4.  InfoZen, Inc. was in the business of information technology services.  D. 10 ¶ 5.  On October 5, 2015, InfoZen, Inc. filed an Article of Conversion in Maryland converting InfoZen, Inc. into InfoZen, LLC.  D. 1 ¶ 5; D.

10 ¶ 4.  Prior to the conversion, InfoZen, Inc.'s clients consisted solely of federal government agencies.   D. 10 ¶ 6.  InfoZen, Inc. had no Massachusetts customers.   <u>Id.</u> ¶ 6.  InfoZen, Inc. had no employees in Massachusetts.   <u>Id.</u> ¶ 7.   No InfoZen, Inc. employees traveled to Massachusetts in connection with any services or goods offered by InfoZen, Inc.  <u>Id.</u> ¶ 8. InfoZen, Inc. did not own property in Massachusetts, did not have an office in Massachusetts and did not have a bank account in Massachusetts.  <u>Id.</u> ¶ 9.  InfoZen, Inc. was not registered to do business in Massachusetts.  <u>Id.</u> ¶ 10.  The InfoZen, Inc. website made no mention of Massachusetts.  <u>Id.</u> ¶ 12.  The InfoZen, Inc. website did not allow customers to transact business.  <u>Id.</u> ¶ 13.  The InfoZen, Inc. website did not specifically advertise for or solicit Massachusetts business.  <u>Id.</u> ¶ 14.

InfoZen, LLC is a Maryland corporation with a principal place of business in Bethesda, Maryland.  D. 10 ¶ 16.  InfoZen, LLC is in the business of information technology services.  <u>Id.</u> ¶ 17.  InfoZen, LLC's clients consist solely of federal government agencies.  <u>Id.</u> ¶ 18.  InfoZen, LLC contracts with its federal agency clients in Maryland, Washington D.C. and Virginia.  <u>Id.</u> ¶ 19.  The InfoZen, LLC website is available at <www.infozen.com>.  <u>Id.</u> ¶ 21.  InfoZen, LLC's website describes its business and provides a Maryland phone number, a Maryland fax number, a Maryland mailing address and multiple e-mail addresses.  <u>Id.</u> ¶ 22. The website does not mention Massachusetts or allow customers to transact business.  <u>Id.</u> ¶¶ 23-24.  InfoZen, LLC has no employees in Massachusetts and no employees have traveled to Massachusetts in connection with services or goods offered by InfoZen, LLC.  <u>Id.</u> ¶¶ 25-26. InfoZen, LLC does not own any property in Massachusetts, have a bank account in Massachusetts, possess registration to do business in Massachusetts or have any Massachusetts customers.  <u>Id.</u> ¶¶ 27-30.

IDentrix is a Delaware limited liability company with a principal place of business in Bethesda, Maryland.  D. 10 ¶ 32.  On or about May 1, 2015, InfoZen, Inc. transferred certain assets, including the IDENTRIX mark, to IDentrix.  Id. ¶ 34.  IDentrix is in the business of providing a subscription service to its cloud-based product (IDentrix) which monitors risk alerts (e.g., criminal records, licenses and bankruptcies) of employees on behalf of private companies.  Id. ¶ 36.  On its website, IDentrix describes its services and provides a Maryland phone number, a Maryland mailing address, and an e-mail address.  Id. ¶ 37.  The website does not mention Massachusetts.  Id. ¶ 38.  IDentrix has no employees in Massachusetts.  Id. ¶ 40.  No IDentrix employee has traveled to Massachusetts in connection with any services or goods offered by IDentrix.  Id. ¶ 41.  IDentrix does not own any property in Massachusetts, have a bank account in Massachusetts or have any customers in Massachusetts.  Id. ¶¶ 42-46.

For over thirty years, MorphoTrust has been using the term IDENTIX, which it adopted as a trade name, trademark and house mark in 1982.  D. 1 ¶ 12.  MorphoTrust owns two federal trademark registrations for the IDENTIX trademark:  1) federal trademark Registration No. 2,425,102 for the word mark IDENTIX in connection with "computer hardware and software used for biometric identification, verification and security" in International Class 9, which registered on January 30, 2001 and 2) federal trademark Registration No. 2,513,388 for a stylized version of the IDENTIX mark in connection with "computer hardware and computer software for use in checking or identifying persons in a biometric verification, identification and security system and electronic finger print readers" in International Class 9, which registered on November 27, 2001.  Id. ¶ 21.

MorphoTrust uses the trademark IDENTIX in interstate commerce in connection with its computer software and related services.  Id. ¶ 13.  MorphoTrust's products use identity-

based characteristics such as biometrics, authentication of documents and verification of other identity-based data to establish and verify personal identification.  Id.  With MorphoTrust's IDENTIX identity-based products, MorphoTrust's clients can confirm when an individual is making up an identity, attempting to obtain multiple identities, stealing someone else's identity or wanted for a crime.  Id. ¶ 15.  Such identity-based verification is needed for, *inter alia*, employment, program enrollment, establishing online accounts, accessing applications or benefits and investigating potential fraud.  Id. ¶ 18.  For three decades, MorphoTrust has advertised and marketed its services under the IDENTIX name and mark to the public, targeting commercial and government entities.  Id. ¶¶ 14, 22.  As a result, the IDENTIX trademark is well-known to the public as identifying MorphoTrust as the source of all such IDENTIX products and services.  Id. ¶ 22.

On October 21, 2013, InfoZen, Inc. filed a federal trademark application on an intent-to-use basis (Ser. No. 86/096,536) to register the word mark IDENTRIX for "computer software for providing rapid visibility of previously undetected identity-based security and fraud risks," and for "software development in the field of providing rapid visibility of previously undetected identity based security and fraud risk."  Id. ¶ 26.  The application matured to registration on June 30, 2015, was issued Registration No. 4,765,207 and alleges October 10, 2013 as the date upon which InfoZen, Inc. first used IDENTRIX in interstate commerce.  Id.  InfoZen, Inc. began use of IDENTRIX in October 2013 with identity-based software and development services for identity-based software.  Id. ¶ 27.  In or around May 1, 2015, InfoZen, Inc. assigned the IDENTRIX mark to IDentrix and recorded the assignment with the United States Patent and Trademark Office on August 11, 2015.  D. 10 ¶ 15.  On May

4, 2015, InfoZen, Inc. and InfoZen, LLC[2]  announced the public launch of IDENTRIX, which was described as a "patented software that continuously evaluates personnel data and proactively alerts organizations to potential risks such as insider threats."  D. 1 ¶ 32.  Those products and services compete directly with the identity-based software and related products and services sold by MorphoTrust under the IDENTIX mark.  Id. ¶ 27.

Defendants operate two websites through which Defendants use and display the IDENTRIX mark in connection with identity-based software and related services.  Id. ¶ 33. Defendants' websites, <www.identrix.com> and <www.infozen.com>, may be viewed from anywhere in the United States and allow users, including residents in Massachusetts, to send communications to Defendants.  Id. ¶ 34.  Both websites include a "Contact Us" link encouraging users to contact Defendants via email, telephone, Twitter, and/or LinkedIn to inquire about the services rendered by Defendants, including the identity-based software and related services sold under the IDENTRIX mark.  Id. ¶ 34.  The websites invite users to request "a free live 30 minute demo" of the IDENTRIX software.  Id. ¶ 35.  To sign up for the demonstration, Defendants ask users to submit their name, email address and phone number. Id.

Prior to filing the trademark application for IDENTRIX, InfoZen, Inc. and InfoZen, LLC had actual knowledge of MorphoTrust and its trademark.  Id. ¶ 28.  InfoZen, Inc. and InfoZen, LLC discussed with MorphoTrust the possibility of partnering on at least one project.  Id.  During that time, InfoZen, Inc. and InfoZen, LLC engaged in negotiations with MorphoTrust regarding a non-disclosure disagreement; the agreement provided that the

---

[2]   MorphoTrust indicates that when it refers to "InfoZen" throughout the complaint, it is referring to InfoZen, Inc. and InfoZen, LLC "collectively."  D. 1 ¶ 5.  Thus, where the complaint invokes "InfoZen," the Court understands the allegation to be directed at both InfoZen, LLC and InfoZen, Inc.

parties litigate all disputes in Massachusetts, agree to exclusive jurisdiction of such courts and waive all defenses of lack of personal jurisdiction.  Id.  In addition, InfoZen, Inc. and InfoZen, LLC sent a PowerPoint presentation to MorphoTrust employees, marketing its products and services.  Id.

After learning of the IDENTRIX trademark application and InfoZen, Inc. and InfoZen, LLC's use of IDENTRIX, MorphoTrust, through its counsel, sent InfoZen, Inc. and InfoZen, LLC a letter on June 4, 2015 alleging trademark infringement and demanding that InfoZen, Inc. and InfoZen, LLC cease use of IDENTRIX.  D. 1 ¶ 37.  On July 15, 2015, after receipt of the letter, InfoZen, Inc. and InfoZen, LLC formed the separate company, IDentrix.  Id.  It was after this letter was sent that InfoZen, Inc. and InfoZen, LLC assigned the IDENTRIX trademark registration from InfoZen, LLC to IDentrix.  Id.  MorphoTrust alleges that Defendants' registration, use and marketing of IDENTRIX, given the similarities with MorphoTrust's IDENTIX, are likely to cause customer confusion as to the origin of identity-based software and related services.  Id. ¶¶ 46-47.  MorphoTrust alleges that Defendants' use of IDENTRIX infringes upon MorphoTrust's trademark.  Id. ¶ 2.

**IV.    Procedural History**

MorphoTrust instituted this action on January 15, 2016.  D. 1.  Defendants moved to dismiss on February 11, 2016.  D. 8.  The Court heard the parties on Defendants' motion and took the motion under advisement.  D. 24.

**V.     Analysis**

**A.     Personal Jurisdiction**

MorphoTrust bears the burden of demonstrating that jurisdiction over its claims is statutorily authorized and consistent with due process requirements.  See Jagex Ltd. v.

Impulse Software, 750 F. Supp. 2d 228, 232 (D. Mass. 2010) (citing Astro–Med, Inc., 591 F.3d at 8).   Since courts "have construed the Massachusetts long-arm statue as being coextensive with the limits permitted by the Constitution," Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. July 13, 2011), the Court "turn[s] directly to the constitutional test for determining specific jurisdiction." Id.

The specific jurisdiction inquiry requires the Court to conduct a three-part analysis. See Jagex Ltd., 750 F. Supp. 2d at 232 (citing Astro-Med, Inc., 591 F.3d at 8).   The Court looks to:  (1) whether the claims arise out of or are related to the defendant's in-state activities (2) whether the defendant has purposefully availed itself of the laws of the forum state and (3) whether the exercise of jurisdiction is reasonable under the circumstances. Id.  Applying this analysis, the Court concludes that it has personal jurisdiction over Defendants.

### 1.  Relatedness

In determining relatedness, courts inquire into whether "the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, 196 F.3d 284, 288 (1st Cir. 1999).  MorphoTrust is a Massachusetts corporation, D. 1 ¶ 3, and alleges that the trademark infringement arose out of, *inter alia*, the publication of a website accessible in Massachusetts and that the website's display of IDENTRIX allegedly caused harm to MorphoTrust in Massachusetts.  D. 1 ¶ 9. MorphoTrust further alleges that, in light of the similarities in their identity-based screening services, between 2013 and 2015, InfoZen, LLC and InfoZen, Inc. discussed with MorphoTrust the possibility of collaborating on a project.  D. 1 ¶ 28.  As part of those discussions, InfoZen, Inc. and InfoZen, LLC sent MorphoTrust's employees a PowerPoint that marketed its products and services. Id.  According to MorphoTrust, while collaboration

efforts were ongoing, InfoZen, Inc. and InfoZen, LLC purchased the domain <www.identrix.com>, filed a federal trademark application to register IDENTRIX and formed IDentrix, LLC.  Id. ¶¶ 26-28

In essence, MorphoTrust alleges that Defendants caused MorphoTrust harm in Massachusetts by registering IDENTRIX, a computer-based product, and operating websites that use, display and market IDENTRIX.  D. 1 ¶¶ 9, 26, 31-35.  Courts have repeatedly found the relatedness prong "easily satisfied" where the alleged trademark infringement arose out of the publication of a website in Massachusetts that allegedly caused harm to a Massachusetts plaintiff.  See, e.g., Edvisors Network, Inc. v. Educ. Advisors, Inc., 755 F. Supp. 2d 272, 281 (D. Mass. 2010); Gather, Inc. v. Gatheroo, LLC, 443 F. Supp. 2d 108, 115 (D. Mass. 2006); N. Light Tech. v. N. Lights Club, 97 F. Supp. 2d 96, 106 (D. Mass. 2000), aff'd sub nom. N. Light Tech., Inc. v. N. Lights Club, 236 F.3d 57 (1st Cir. 2001) (concluding that "[t]he [d]efendants' potentially tortious acts all arise from the [d]efendants' publishing of a web site in Massachusetts, thus, satisfying [the relatedness] element"); Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 44 (D. Mass. 1997) (where "cause of action arises from an alleged trademark infringement concerning a Web site that is continuously available to Massachusetts residents and causing tortious injury in Massachusetts to [plaintiff trademark owners]" the claims "relate directly from the defendant's contact with the state").  Here, the crux of MorphoTrust's allegations is that Defendants' websites infringed a Massachusetts corporation's trademark after Defendants attempted to do business with the Massachusetts corporation.  Thus, MorphoTrust has sufficiently demonstrated that its claims relate to Defendants' conduct in Massachusetts.

2.      **Purposeful Availment**

The purposeful availment prong focuses on the defendant's intentionality.  See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001).  The prong serves "to ensure that only those defendants that willingly and purposefully avail themselves of the benefits of a state will be brought to court there."  Hasbro Inc., 994 F. Supp. at 44-45.  For the exercise of jurisdiction to be proper, "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state."  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).  In-state contacts of that level "invok[e] the benefits and protections of that state's laws and mak[e] the defendant's involuntary presence before the state's courts foreseeable."  Id.  "In determining voluntariness, the Court evaluates whether a defendant deliberately engaged in significant activities within the forum, such that a defendant's contacts are not random, fortuitous, attenuated or 'result solely from the unilateral activity of another party or a third person.'"  Horizon Comics Prod. v. Marvel Entm't, LLC, No. 15-cv-11684-DJC, 2016 WL 526145, at *5 (D. Mass. Feb. 9, 2016).  The Court finds that the purposeful availment prong is satisfied here by the combination of Defendants' interactive websites that are available in Massachusetts, Defendants' allegedly willful infringement of the trademark of a Massachusetts corporation, Defendants' attempt to conduct business with the same Massachusetts corporation, Defendants' contracts with federal agencies that have offices in Massachusetts and Defendants' need to rely upon Massachusetts records to operate the allegedly infringing product.

### a.  The Nature and Reach of Defendants' Websites

Defendants focused on the nature of Defendants' website at the motion hearing, yet even this factor weighs in favor of jurisdiction.  Although only one of the factors in the analysis, Defendants' websites are sufficiently interactive to support the exercise of personal jurisdiction.  Defendants correctly assert that the existence of a passive website alone is not a sufficient basis for the exercise of jurisdiction.  D. 9 at 11.  "[T]he mere availability of a passive website, even one containing an allegedly-infringed trademark owned by a forum company, cannot, standing alone, subject a defendant to personal jurisdiction in the forum." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016).  Thus, courts must assess the functions and capabilities of the website to make a determination of whether the website is interactive and whether, combined with other factors, the website supports jurisdiction.  See Edvisors Network, Inc. v. Educ. Advisors, Inc., 755 F. Supp. 2d 272, 282 (D. Mass. 2010).  "[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  Id.  (quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  "[S]ome expression of a desire to do business in the pertinent state must exist."  Id. at 281-82 (quoting N. Light Tech., Inc., 97 F.Supp.2d at 106).

Defendants operate two websites related to the IDENTRIX mark, <www.identrix.com> and <www.infozen.com>, that are available for viewing from anywhere in the United States.  D. 1 ¶¶ 33, 34. [3]   The websites explain that "IDentrix is a cloud-based platform that you log into through a secure web interface.  Once your identities are on-

---

[3]   MorphoTrust contends that at the time of filing, the two websites were linked and that requesting certain services, including the free demonstration of the product, required engaging with both websites.  D. 15 at 10-11.  Thus, for the purposes of this motion, the Court accepts this allegation and treats the websites as interconnected.

boarded (approximately 30 minutes) and your customized alert requirements are configured through an easy to use admin interface, you will receive risk alerts."  D. 16-1 at 5.  The websites further explain that the technology "works by running an organization's identity population against comprehensive and external data sources, including criminal, assets, professional licenses and sanctions."  Id.  In an effort to promote their product, Defendants' websites contain multiple functions that seek to facilitate interaction with visitors to its websites, including any visitors from Massachusetts, and solicit business from those individuals.  First, Defendants' websites include a "Contact Us" link, which provides visitors the email, telephone number, Twitter and LinkedIn information "[t]o find out more about how IDentrix can help your organization."  D. 1 ¶ 34; D. 16-1 at 2, 12.  With this information, visitors to the website, including Massachusetts residents, are invited to contact Defendants and inquire about Defendants' services.  D. 1 ¶ 34.  This type of encouragement of direct contact constitutes an effort to solicit business and is one factor that supports the conclusion that a website is interactive.  See Hasbro Inc., 994 F. Supp. at 45 (concluding that defendant's website was interactive where it "encourage[ed] and enable[ed] anyone who wishe[d], including Massachusetts residents, to send email to the company").

Second, and more significantly, Defendants' websites offer visitors a free live demonstration of Defendants' IDENTRIX product.[4]  D. 1 ¶ 35; D. 16-14; D. 16-15.  To request the "demo," Defendants ask users to "click on a hyperlink displayed on

---

[4]  Even if Defendants intended to deny that its websites offered a free demonstration, D. 9 at 11-12, the Court accepts MorphoTrust's allegation as true, as the Court must do at this juncture.  See Media3 Techs., LLC v. CableSouth Media III, LLC, 17 F. Supp. 3d 107, 108 n.1 (D. Mass. 2014) (explaining that "[o]n a motion to dismiss for lack of personal jurisdiction, the court should accept the plaintiff's properly documented evidentiary proffers as true, whether or not disputed, and construe them in the light most favorable to the plaintiff").

<www.identrix.com>, which opens to the InfoZen website at <www.infozen.com>, through which Defendants require users to submit information about themselves." D. 1 ¶ 35. The window that invites visitors to request a demonstration is entitled "[c]an I see a demo of IDentrix" and states "[w]e offer a free live 30 minute demo, during which time you'll be able to see the unique features and data coverage offered as part of the solution." D. 16-14 at 8-9. The window further provides "[t]o sign-up for a demo, click here and one of our data specialists will be in touch with you shortly to schedule a time." Id.   The personal information visitors must submit to arrange a live demonstration includes users' names, email addresses, company and telephone numbers. D. 1 ¶ 35; D. 16-15 at 2. Defendants' websites expressly notes that by submitting this personal information, visitors to the website are "granting [IDentrix] permission to email you." D. 16-15 at 2. Thereafter, visitors must affirmatively unsubscribe to "revoke permission to mail to your email address at any time." Id.

Due to these features, Defendants' websites are interactive and express a desire to do business in Massachusetts. A "passive" website is one "that does little more than make information available to those who are interested in it." Edvisors Network, Inc., 755 F. Supp. 2d at 282 (quoting Zippo Mfg. Co, 952 F. Supp. at 1124). Defendants' websites (1) provide potential clients from multiple jurisdictions, including Massachusetts, the information necessary to contact Defendants; (2) provide potential clients the opportunity to engage directly with Defendants' software-based product "live" and in a manner that requires interaction with one of Defendants' data specialists; and (3) collect the personal information of visitors to the website while obtaining express permission to contact those visitors. Indeed, because Defendants' websites collect the personal information of visitors before allowing the

visitors to take advantage of the free demonstration, when Defendants then "schedule" the free demonstration, Defendants are doing so with a certain amount of knowledge regarding those visitors' identities – including any instances where those visitors are Massachusetts residents. In all of these ways, Defendants' websites do more than make information available in a passive manner. See, e.g., Venture Tape Corp. v. McGills Glass Warehouse, 292 F. Supp. 2d 230, 231 (D. Mass. 2003) (concluding that defendant's website was interactive where "users located anywhere in the country (or, indeed, the world) [could] use it to place orders, to e-mail the company, or to subscribe to its mailing list"). Defendants' websites facilitate interaction with Massachusetts residents while supplying Defendants the personal identification information of those Massachusetts residents.

Defendants' websites are substantially similar to the website in Edvisors Network, Inc. v. Educ. Advisors, Inc., that was found to be interactive. Edvisors Network, Inc. v. Educ. Advisors, Inc., 755 F. Supp. 2d 272, 276 (D. Mass. 2010). Like Defendants' websites, the website in Edvisors Network "provide[d] [defendant] with a means for reaching out to attract new business from foreign residents, including those in Massachusetts." Id. at 282. Like Defendants' websites, the website in Edvisors Network "encourage[d] users to contact [defendant] and submit their own contact information, as well as any comments, through the website's 'Contact Us' feature." Id. Finally, similar to the free demonstration supplied by Defendants' websites, the website in Edvisors Network invited users to request a "free consultation." Id. Those who requested a free consultation through the website were asked to submit contact information, including email address and telephone number. Id. The court determined that the website's invitation to users to request a "free consultation" constituted soliciting business in Massachusetts. Id. In light of the website's features, the court

concluded that "the defendant ha[d] expressed a desire to do business in Massachusetts through use of an interactive website."   Id.   Just as the website in Edvisors Network "reach[ed] beyond California in an effort to provide services to residents of Massachusetts," Defendants' websites, through their collection of personal information, invitation to visitors to contact Defendants and provision of a free demonstration, solicit business in Massachusetts. Id. at 283.   Accordingly, this Court concludes that Defendants' websites are interactive and show purposeful availment.

In addition to the nature of the websites, the reach of the websites is another factor that supports a showing of purposeful availment here. Defendants intended for their websites to enter Massachusetts, MorphoTrust's home, and that intentional entrance into Massachusetts provides additional support for the exercise of jurisdiction.  See, e.g., N. Light Tech., Inc., 97 F. Supp. 2d at 107 (concluding that "[d]efendants ha[d] expressed an intention to do business in Massachusetts" and pointing to, *inter alia*, the fact that "the [d]efendant's knew that their allegedly infringing web site was entering Massachusetts, [the plaintiff's] home"); Hasbro Inc., 994 F. Supp. at 45 (noting that "[defendant] purposefully directed its advertising at all the states" and "did nothing to avoid Massachusetts" in concluding that the court had jurisdiction over defendant).

### b.   The "Something More" that Supports the Exercise of Jurisdiction

Significantly, Defendants' alleged targeting of a Massachusetts corporation with their infringing conduct, Defendants' attempt to conduct business with that Massachusetts corporation and Defendants' need to rely upon Massachusetts resources to service any potential Massachusetts clients all provide the "something more" that is required where the exercise of personal jurisdiction is supported by an interactive website.  Venture Tape Corp.,

292 F. Supp. 2d at 232 (citing Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452-53 (3d Cir. 2003)).   Where an interactive website supports the exercise of jurisdiction, courts have typically required "'something more' than simply making [the] interactive website available." Id.   While the exact perimeters of the "something more" requirement are not clear, courts have repeatedly found that the alleged trademark infringement of a Massachusetts corporation is sufficient.   See, e.g., Bose Corp. v. Neher, No. 09-cv-11479-PBS, 2010 WL 3814886, at *5 (D. Mass. July 30, 2010) (explaining that "[e]ven assuming that she never sold any allegedly counterfeit headphones to a Massachusetts address, the purposeful availment prong is still met if plaintiff demonstrates her alleged trademark infringement against a Massachusetts company"); Venture Tape Corp., 292 F. Supp. at 233 (concluding that "there [was] indeed 'something more' to suggest that [the defendant] should anticipate being haled into court in Massachusetts:   the fact that the target of the alleged trademark infringement was a Massachusetts company").   Where, as here, the defendant knows that the target of its allegedly wrongful conduct is located in Massachusetts, the purposeful availment prong is satisfied.   See Digital Equip. Corp. v. AltaVista Tech., Inc., 960 F. Supp. 456, 470 (D. Mass. 1997) (citing Panavision Int'l, L.P. v. Toeppen, 938 F. Supp. 616, 621–22 (C.D.Cal.1996)). Because Defendants knew that MorphoTrust was a Massachusetts corporation, Defendants knew their allegedly wrongful conduct would have "an effect on consumers in this state, and an especially harmful effect on [MorphoTrust], whose trademark rights are at issue." Id.   This informed and deliberate conduct "satisfies the constitutional 'purposeful availment' due process tests." Id.

InfoZen, Inc. and InfoZen, LLC's discussions with MorphoTrust regarding the possibility of a joint project are also sufficient to constitute the "something more" that is

required because InfoZen, Inc. and InfoZen, LLC's engagement in those discussions reflect deliberate and voluntary engagement with Massachusetts.   See, e.g., Sportschannel New England Ltd. P'ship v. Fancaster, Inc., No. 09-cv-11884-NG, 2010 WL 3895177, at *6 (D. Mass. Oct. 1, 2010) (noting that "[a]nother place to look for 'something more' is the more traditional approach, which looks to the defendant's acts to determine whether he purposefully availed himself of Massachusetts protection through his business activities, activities that suggest he foresaw being 'haled into court' here").   MorphoTrust has alleged that it engaged in discussions with InfoZen, LLC and InfoZen, Inc. regarding the possibility of partnering on a project.  D. 1 ¶ 28.   As alleged, the discussions included negotiations regarding a non-disclosure agreement that provided that the parties litigate any disputes in Massachusetts, agree to the exclusive jurisdiction of Massachusetts courts and waive all defenses of personal jurisdiction.  Id.; D. 9 at 9-10, n.4.  In addition, InfoZen, LLC and InfoZen, Inc. sent product-related materials, in the form of a PowerPoint presentation, to the employees of MorphoTrust, a Massachusetts corporation.  D. 1 ¶ 28.   Thus, MorphoTrust has alleged that InfoZen, LLC and InfoZen, Inc. intentionally pursued business opportunity with a Massachusetts corporation.   These allegations demonstrate InfoZen, Inc. and InfoZen, LLC's desire to do business in Massachusetts.  See e.g., N. Light Tech, 97 F. Supp. 2d at 107 (concluding that defendant's attempt to do business with plaintiff, including attempting to "entice the [p]laintiff to take part in the [d]efendants' 'new business model'" constituted purposeful availment).

Finally, MorphoTrust argues that Defendants' IDENTRIX product must rely upon Massachusetts records and databases to conduct its identification-verification services for those of Defendants' clients who have offices in Massachusetts. D. 15 at 18-19.  MorphoTrust alleges that certain of Defendants' federal agency clients do in fact have offices in

Massachusetts.  D. 1 ¶ 24.  Thus, to the extent that Defendants conduct identification-verification services for those clients or advertise identification-verification services in an attempt to solicit the continued business of those Massachusetts offices, Defendants must rely upon the records of Massachusetts courts, municipalities and commonwealth agencies. D. 15 at 19; D. 16-1 at 2.  In other words, the nature of Defendants' product necessarily requires interaction with Massachusetts resources.  Such contact with Massachusetts is "not random, fortuitous, [or] attenuated" nor does it "'result solely from the unilateral activity of another party or a third person.'"  Horizon Comics Prod., 2016 WL 526145, at *5 (citing Gather, Inc. v. Gatheroo LLC, 443 F. Supp. 2d 108, 114 (D. Mass. 2006)).  This allegation, therefore, presents another "related contact[]" with Massachusetts that further strengthens the conclusion that Defendants have purposefully availed themselves of the benefits of Massachusetts.  See, e.g., Venture Tape Corp., 292 F. Supp. 2d at 233 (recognizing that purposeful availment can be demonstrated by targeting a website to the forum state, knowingly interacting with residents of the forum state via a website or "through sufficient other related contacts").

Contrary to Defendants' assertions, A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 57 (1st Cir. 2016) does not demand the conclusion that jurisdiction is improper.  In A Corp., the court concluded that a website that "offer[ed] no genuine 'interactive' features, functioning more like a digital billboard, passively advertising the business" was insufficient to show purposeful availment.  A Corp., 812 F.3d at 60.  Defendants' websites here are not "like a digital billboard" because Defendants' websites provide a free, live demonstration of the product and collect the interested visitors' contact information before arranging the demonstration.  D. 1 ¶ 35.  Moreover, in A Corp., the plaintiff relied exclusively upon the

website to argue that jurisdiction was proper.  See A Corp., 812 F.3d at 60 ("recognizing that

"A Corp. ha[d] offered only one real contact between Massachusetts and All American–All

American's use of a website that is accessible from everywhere in the world, including

Massachusetts").  Here, the interactive websites are only one of several factors that support

the exercise of jurisdiction.  Similarly, Sportschannel New England Ltd. P'ship does not

compel a finding against jurisdiction because the website there was not "a commercial

enterprise at all" since the defendant was not selling any product.  Sportschannel New

England Ltd. P'ship, No. 09-cv-11884-NG, 2010 WL 3895177, at *7 (citing BroadVoice, Inc.

v. TP Innovations LLC, 733 F. Supp. 2d 219 (D. Mass. 2010)).  Because Defendants'

websites here advertise products and services that Defendants are selling, the websites are

commercial enterprises.  For that reason, Defendants' reliance upon Sportschannel New

England Ltd. P'ship is unavailing.

       In the end, even if Defendants' interactive websites were not on their own a sufficient

basis for the exercise of jurisdiction, the websites in combination with the allegedly

intentional targeting of wrongful conduct at a Massachusetts corporation, the alleged attempt

to do business with that Massachusetts corporation and the need to rely upon Massachusetts

records to service existing and potential clients with offices in Massachusetts, constitutes

purposeful availment and supports the exercise of personal jurisdiction over the Defendants.

               **3.      Reasonableness**

       The Court must look to five factors to determine whether the exercise of personal

jurisdiction    is    reasonable:      (1)    the    Defendants'    burden    of    appearing

(2) Massachusetts' interest in adjudicating the dispute (3) the plaintiff's interest in obtaining

convenient and effective relief (4) the judicial system's interest in obtaining the most effective

resolution of the controversy and (5) the common interests of all sovereigns in promoting substantive social policies.   See Adelson v. Hananel, 510 F.3d 43, 51 (1st Cir. 2007). Importantly, "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction."   Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994) (citation omitted).   Moreover, where, as here, the Court has concluded that minimum contacts exist with Massachusetts, "[t]he gestalt factors rarely seem to preclude jurisdiction where relevant minimum contacts exist."   Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 66 (1st Cir. 2002).   In cases where the plaintiff is from Massachusetts, "the plaintiff has an interest in litigating conveniently in its home state, which in turn has an interest in affording its citizens a convenient forum."   Id.

Having weighed the relevant factors, the Court concludes that exercising personal jurisdiction over Defendants is reasonable.   For the first factor to "have any significance, the defendant must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way."   Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 718 (1st Cir. 1996) (citation and internal quotation marks omitted).   At base, Defendants contend that they are non-Massachusetts corporations with no contacts in Massachusetts and their witnesses are located outside of Massachusetts. D. 9 at 14-15.   The Court has already rejected Defendants' assertion that they have no contacts in Massachusetts.   Furthermore, having to transport witnesses does not amount to a "special or unusual burden," beyond the "ordinary inconveniences of litigating an action in another state."   Blu Homes, Inc. v. Kaufmann, No. 10-cv-11418-DJC, 2011 WL 3290362, at *5-6 (D. Mass. July 29, 2011) (concluding that the exercise of jurisdiction was reasonable

despite defendant's argument that it would be "unfairly burdened by the expense and inconvenience of additional and resources lost in traveling to and from Massachusetts").

The remaining factors all weigh in favor of jurisdiction.  The second factor "weighs heavily in favor of keeping the lawsuit in Massachusetts" because "[MorphoTrust] is located in Massachusetts, and the alleged infringement is likely to have its most significant effects here."  Edvisors Network, Inc., 755 F. Supp. 2d at 285 (internal quotation marks omitted) (citing N. Light Tech., Inc., 97 F.Supp.2d at 107; Hasbro, Inc., 994 F. Supp. at 45; and Digital Equip. Corp., 960 F. Supp. at 471).  "Massachusetts has an interest in preventing trademark infringement against those subject to the protections and requirements of its laws."  Id.  The third factor weighs in favor of jurisdiction as well because, as the First Circuit has made clear, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."  Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995) (citing Foster–Miller, Inc., 46 F.3d at 151; Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994); and Ticketmaster, 26 F.3d at 211).  MorphoTrust represents that the majority of relevant evidence and witnesses is located in Massachusetts.  D. 15 at 20.  Thus, it would be more convenient for MorphoTrust to litigate its claims here in Massachusetts where MorphoTrust is based.  The fourth factor is "[u]sually . . . a wash."  Nowak, 94 F.3d at 718.  Even still, this factor weighs in favor of MorphoTrust:  were this Court to dismiss this case, it is likely the parties would still need judicial resolution of their dispute – given that the alleged infringement is ongoing.  D. 1 ¶¶ 37, 39, 42, 45-46.  Thus, the "most efficient path" is to proceed with this already initiated lawsuit.  Hasbro Inc., 994 F. Supp. at 46.  Finally, the fifth factor supports litigating this dispute in Massachusetts because "[r]equiring alleged infringers . . . to bear the burden of traveling to a forum in which their voluntary actions have caused foreseeable injury

encourages them to consider this burden before they act."  Berklee Coll. of Music, Inc. v. Music Indus. Educators, Inc., 733 F. Supp. 2d 204, 211 (D. Mass. 2010).

For all of these reasons, the Court concludes that MorphoTrust's claims are related to Defendant's contacts with Massachusetts, Defendants have purposefully availed themselves of Massachusetts and the exercise of jurisdiction over Defendants is reasonable.  Defendants' contacts with Massachusetts satisfy the "minimum contacts" standard such that the resolution of this matter in Massachusetts does not "offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316  (1945).

### B.      Venue

Defendants also contend that venue is improper.  D. 8.  "Except as otherwise provided by law . . . [Section 1391] shall govern the venue of all civil actions brought in district courts of the United States . . . ."  28 U.S.C. § 1391(a)(1).  The text of 28 U.S.C. § 1391(b)(1) provides that a civil action may be properly brought in any judicial district in which any defendant resides, so long as all defendants are residents of the state in which the district is located.  Moreover, a corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  28 U.S.C. § 1391(c)(2).  Thus, because the Court finds that specific personal jurisdiction is proper over Defendants, Defendants "reside" in this judicial district.  Therefore, venue in this judicial district is proper.  See, e.g., Berklee Coll. of Music, Inc., 733 F. Supp. 2d at 211 (explaining that "because this court holds specific personal jurisdiction over [defendant], venue is also proper as to [defendant]").

### C.      Transfer

Finally, as an alternative to dismissal for lack of jurisdiction or venue, Defendants

move to transfer the action to the District of Maryland pursuant to 28 U.S.C. § 1404(a).  D. 8.

"The decision on choice of venue is ordinarily a matter within the district court's discretion."

Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977).  In exercising that

discretion courts are instructed to be mindful that a presumption exists in favor of the

plaintiff's choice of forum.  See Momenta Pharm., Inc. v. Amphastar Pharm., Inc., 841 F.

Supp. 2d 514, 522 (D. Mass. 2012).  The burden to prove that transferring a claim is

warranted belongs to the defendant.  See id. The factors for the Court to consider in

determining whether transfer is warranted include (1) the plaintiff's choice of forum; (2) the

relative convenience of the parties; (3) the convenience of the witnesses and location of

documents; (4) any connection between the forum and the issues; (5) the law to be applied;

and (6) the public interest at stake.  Id.

Defendants' argument in favor of transfer largely reflects their argument against

personal jurisdiction and the argument is similarly deficient as to the asserted grounds for

transfers.  Defendants contend that they are not Massachusetts corporations and they do not

have employees here while MorphoTrust has offices and employees in Washington, D.C.  D.

9 at 19-20.  Defendants also assert that all of their witnesses are located in the greater

Washington D.C. area and relevant documents reside on servers located in Maryland.  Id. at

19-20.  While the court recognizes that certain witnesses may have to travel to Massachusetts,

this does not compel transfer because transferring the case would only shift the burden of

transporting witnesses onto MorphoTrust.  "Transfer of venue is inappropriate . . . where its

effect merely shifts the inconvenience from one party to another."  Holmes Grp., Inc. v.

Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 18 (D. Mass. 2002) (citing

Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000)).  As to documents,

the fact that Defendants' servers may be in Maryland is not compelling: "[w]hile the location of records and documents relevant to the litigation is a factor that the court should consider, it is not a particularly important factor because of the ease with which that information can be transported to another jurisdiction." Blu Homes, Inc., 2011 WL 3290362, at *10 (citation omitted). The movement of electronic documents between jurisdictions is commonplace in modern litigation. See id.

Here, Massachusetts' investment in this action is substantial because Defendants are alleged to have violated the trademark of a Massachusetts corporation. Moreover, MorphoTrust's claims consist of two federal claims and three Massachusetts state law claims. D. 1 ¶¶ 49-87. The Court is not compelled to transfer a case in which all of the state law claims arise under Massachusetts law and no other state is substantially more connected to the federal claims. See Jagex Ltd., 750 F. Supp. 2d at 234 (explaining that where federal law will be applied either state is "a suitable forum"). In the end, "[o]ther than the convenience of the defendants themselves, there is no basis to transfer the venue of this case. The defendants are highly mobile, and they do not allege any undue burden in litigating this matter in Massachusetts." Sindi v. El-Moslimany, No. 13-cv-10798-IT, 2014 WL 6893537, at *12 (D. Mass. Dec. 5, 2014). Accordingly, Defendants' request to transfer venue is denied.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss. D. 8. In light of the Court's decision, MorphoTrust's request for jurisdictional discovery is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge